# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOSE G. | ) |
| | ) No. 20-cv-1669 |
| Plaintiff, | ) |
| | ) Magistrate Judge M. David Weisman |
| v. | ) |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Jose G. brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Social Security Administration ("SSA's") decision that his medical condition improved and that he is no longer entitled to disability benefits. For the reasons set forth below, the Court reverses the SSA's decision.

## Background

On January 28, 2010, plaintiff was found disabled due to blindness in his right eye and vision loss in his left eye. (R. 15-23.) On April 15, 2013, the SSA conducted a continuing disability review and determined that plaintiff's disability continued. (R. 65-68.) On August 30, 2016, the SSA conducted another continuing disability review and determined that "medical improvement" ("MI") had occurred. (R. 72-73.) Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"), which was held on December 10, 2018. (R. 29-60.) On February 11, 2019, the ALJ issued a decision finding that plaintiff's disability ended on August 30, 2016 and, thus, he was no longer disabled as of that date. (R. 15-23.) The Appeals Council declined to review the decision (R. 1-6.), leaving the ALJ's decision as the final decision of the

1

SSA, reviewable by this Court pursuant to 20 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

**Discussion**

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). While generous, this standard "is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

According to the SSA's regulations, MI "is any decrease in the medical severity of [the] impairment(s) which was present at the time of the most recent . . . decision [in plaintiff's favor.]" 20 C.F.R. § 404.1594(b)(1). SSA regulations prescribe an eight-part sequential test for determining whether MI has occurred. *See* 20 C.F.R. § 404.1594(f). The SSA must consider whether: (1) the claimant is engaged in substantial gainful activity; (2) the claimant has an impairment or combination of impairments that meets or equals a listed impairment; (3) there has been MI; (4) the MI is related to the claimant's ability to work; (5) any exceptions to MI apply; (6) the claimant's current impairments are severe; (7) if so, the claimant has the residual functional capacity ("RFC") to do past relevant work; and (8) if not, the claimant's RFC enables him to do other work. *Id*.

Here, the ALJ found that plaintiff was disabled as of January 28, 2010 and continued to be disabled as of April 15, 2013, his comparison point decision ("CPD"). (R. 15, 17.) At the time of his CPD, plaintiff had the following medically determinable impairments: blindness in the right eye and vision loss in the left eye. (*Id.*) At step one, the ALJ found that plaintiff had not engaged

in substantial gainful activity through August 30, 2016. (*Id*.) At step two, the ALJ found that plaintiff did not have an impairment or combination of impairments which met or medically equaled the severity of a listed impairment since August 30, 2016. (*Id*.) At steps three and four, the ALJ found that MI related to plaintiff's ability to work occurred on August 30, 2016. (R. 17-18.) At step six,[1] the ALJ found that plaintiff continued to have severe impairments of blindness in the right eye and vision loss in the left eye. (R. 18.) At steps seven and eight, the ALJ found that plaintiff has no past relevant work and that, as of August 30, 2016, plaintiff had the RFC to perform a significant number of jobs in the national economy. (R. 18-22.) Thus, the ALJ concluded, plaintiff's disability ended on August 30, 2016. (R. 22.)

Plaintiff first argues that the ALJ failed to properly assess his RFC. According to plaintiff, the evidence does not support the ALJ's finding that plaintiff could work if he were able to avoid bright sunlight or bright flickering lights, and the Vocational Expert ("VE") should have considered plaintiff's use of dark, polarized glasses in his hypothetical. Additionally, plaintiff complains that the ALJ failed to explain whether he found plaintiff's reported limitations consistent with the record, and the ALJ erred by relying on outdated medical opinions.

While an ALJ "is not required to address every piece of evidence," he must "build an accurate and logical bridge" connecting the evidence to the conclusions reached. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). The ALJ's RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The determination of RFC rests with the ALJ, not the physicians. 20 C.F.R. § 404.1527(d)(2).

---

[1] Step five does not apply.

3

Here, plaintiff testified that his eyes are sensitive to light, he cannot tolerate light for long periods of time, light causes his eyes to become watery/teary, he gets headaches at least twice a day, he lies down for a couple of hours in a dark room to alleviate his headaches, his impairments have progressively worsened, he has pain in both eyes (more so in his right eye), and he wears a patch and prescription polarized glasses. (R. 19, 41-50.) The ALJ determined that plaintiff's testimony concerning the intensity, persistence and limiting effects of his symptoms is not entirely consistent with the medical records. (R. 19.) The ALJ noted that Dr. Beltran conducted a consultative examination on August 19, 2016 and determined that plaintiff's corrected vision in his left eye was 20/25. (R. 19, 275.) He also acknowledged a Disability Hearing Officer's Decision, dated December 11, 2017, which noted that plaintiff "wears his prescription polaroid glasses due to light sensitivity," that plaintiff's polaroid glasses help with pain in his left eye, and that plaintiff gets headaches if he does not wear his glasses. (R. 20, 76.) The ALJ also noted that plaintiff went for a second opinion on January 2, 2018 at the Midwest Eye Center about his eye pain and light sensitivity. (R. 20, 327.) The notes from that consultation state that Plaintiff denied having any symptoms. (*Id*.) As to opinion evidence, state agency medical consultants, Drs. Kenney and Dow, issued opinions on August 25, 2016 and September 28, 2016, respectively. (R. 20, 279-286, 287-294.) Dr. Kenney determined that plaintiff could do work at all exertional levels and had some visual limitations. (R. 20, 280-283.) Dr. Dow agreed and further determined that plaintiff had some environmental limitations, including avoiding unprotected heights and hazardous machinery. (R. 20, 288-291.) The ALJ gave great weight to Drs. Kenney and Dow's opinions and applied additional physical and environmental limitations based on plaintiff's visual limitations. (R. 20-21.)

Plaintiff complains that his RFC is faulty because "[n]o medical opinions or treatment notes in the record stated that [plaintiff] would be able to work if he were able to avoid bright sunlight or bright flickering lights," and "no medical opinion or other evidence reflected that he could use his vision occasionally (or up to one third of a workday) for near visual acuity." (Dkt. 17 at 7.) As discussed, the ALJ considered plaintiff's visual problems and complaints related to light sensitivity and headaches. He noted that, while light irritates plaintiff's eyes and causes headaches, plaintiff's polarized prescription glasses help. The ALJ also noted that plaintiff denied symptoms of pain and light sensitivity in his left eye when he went for his second consultative eye exam on January 2, 2018. Additionally, while the ALJ gave great weight to the state agency medical consultants' opinions, the ALJ created a more restrictive RFC. "When no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error." *See Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019); *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018) (same). Accordingly, the Court finds that the ALJ's decision sufficiently explains how the RFC accommodates plaintiff's visual limitations related to his light sensitivity.[2]

Plaintiff also argues that the ALJ erred by relying on outdated medical evidence. Plaintiff points to the medical reports of Dr. Sarwar Zahid, Dr. M. Ovais Peracha, and Dr. Chee who discuss plaintiff's sensitivity to light and generally discuss plaintiff's limited vision. (R. 324, 327, and 339.) Plaintiff also points to Dr. Mieler's medical report[3], dated April 27, 2018, which notes that

---

[2] Because the RFC is not faulty, the questions posed to the VE likewise were not faulty. *See Wayne P. v. Saul*, No. 19-cv-8137, 2020 WL 5909066, at n.2 (N.D. Ill. Oct. 6, 2020).

[3] The ALJ gave little weight to Dr. Mieler's opinion, explaining that Dr. Mieler's opinion and eye exam results are inconsistent. (R. 21.) The ALJ stated, "Dr. Mieler opined that the [plaintiff] had a left eye vision of 20/100, with prescription glasses. However, the eye exam results attached to his opinion show the left eye vision of 20/70, which is better than 20/100 . . . [a]dditionally, with regard to the eye exam results, it is unclear whether the exam was conducted with prescription lenses." (*Id.*) The Court notes that Dr. Mieler's opinion is dated March 6, 2018 and, therefore, pre-dates the April 27, 2018 examination. (Dkts. 333 and 335.) It is unclear if plaintiff underwent an eye examination prior to the issuance of Dr. Mieler's March 6, 2018 letter and whether the results of that (possible) earlier examination would support Dr. Mieler's opinion that plaintiff had 20/100 visual acuity.

plaintiff has 20/70 vision.[4]  The evidence about plaintiff's sensitivity to light is not new.  However, Dr. Mieler's medical report about plaintiff's reduced visual acuity is new and potentially significant such that it could have informed the state agency medical consultants' decision about plaintiff's ability to work.  "An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion."  *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018).  An ALJ may not rely on a state agency medical consultant's opinion if the physician did not review all pertinent medical evidence.  *See, e.g., Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) ("Fatally, the administrative law judge failed to submit that MRI to medical scrutiny, as she should have done since it was new and potentially decisive medical evidence.").  Dr. Beltran examined plaintiff in August 2016 and determined plaintiff's corrected vision in his left eye to be 20/25.  The state agency medical examiners reviewed these reports and determined that plaintiff had MI.  Dr. Mieler's examination results from April 2018, however, show that plaintiff had 20/70 visual acuity in his left eye, which represents low visual acuity.[5]  This medical evidence is new and potentially decisive and should have been subjected to medical scrutiny.  This matter is remanded for the ALJ to address this issue.

Plaintiff also challenges the ALJ's subjective symptom analysis.  The Court declines to discuss this issue at length given the need for remand that already exists.

---

[4]  It is unclear whether this visual acuity number is with or without correction.  (R. 325); (*See also* dkt. 17 at 9-10; dkt. 23 at 10-11.)

[5]  Visual acuity of 20/70 to 20/160 is considered a moderate visual impairment or moderate low vision.  *See* American Optometric Association, Low Vision and Vision Rehabilitation, https://www.aoa.org/healthy-eyes/caring-for-your-eyes/low-vision-and-vision-rehab?sso=y (last visited March 17, 2021).

**Conclusion**

For the reasons set forth above, the Court reverses the Commissioner's decision, denies the Commissioner's motion for summary judgment [22], and remands this case for further proceedings consistent with this Memorandum Opinion and Order.

SO ORDERED.                                    ENTERED: July 14, 2021

*M. David Weisman*

**M. David Weisman**
**United States Magistrate Judge**